IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| KOSHY MATHEWS MATHAI, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 6:24-cv-00612-ADA-JCM |
| UNITED STATES OF AMERICA, | § § § | |
| *Defendant*. | § § | |

## DEFENDANT'S MOTION TO DISMISS

This case concerns Plaintiff Koshy Mathews Mathai's negotiations regarding the terms of employment and compensation with the Department of Veteran's Affairs ("VA"). In his Complaint, Mathai asserts a single claim under the Federal Tort Claims Act ("FTCA") for intentional infliction of emotional distress based on allegations that the VA did not reinstate a recruitment bonus following his initial two years of employment as allegedly represented during the recruitment process. *See* Compl. ¶¶ 7, 10, ECF No. 1. The United States, however, has not waived sovereign immunity for tort claims arising out of a misrepresentation, and to the extent Plaintiff's claim sounds in contract, the Court of Federal Claims has exclusive jurisdiction. Mathai's Complaint should thus be dismissed.

## Background

Mathai's Complaint is based on discussions concerning his employment with the VA. In 2019, Mathai was tentatively selected for a Physician (Pain Management) position at the VA Central Texas Health Care System. Compl. ¶¶ 20, 25, ECF No. 1. Mathai claims that during the recruitment process for this position, he was offered a $50,000 recruitment incentive for his first two years of employment. *Id.* ¶ 17. Mathai also alleges that he was told in a phone call conversation

that a "retention bonus" was "likely but not promised" beyond his first two years. *See id.* ¶¶ 17, 29-30. Mathai states that Dr. Olawale Fashina, Chief of Staff of the Central Texas VA, informed Mathai that he could not promise that the two-year incentive would continue beyond Mathai's first two years of employment. *See id.* ¶¶ 16-17. Mathai further alleges that he followed up with Dr. Fashina by e-mail to confirm his understanding that "after the first two years, the $25,000 per year may typically be continued by way of retention bonus, although you cannot contractually commit to this in the setting/structure of the recruitment bonus as per any initial employment offer." *Id.* ¶ 34. Mathai says he did not receive a response. *Id.* Dr. Fashina ultimately recommended Mathai for a $25,000 annual recruitment bonus for two years. *See id.* ¶ 35. And Mathai accepted the offer to join the VA Central Texas Health Care System in December 2019. *See id.* ¶¶ 43-47.

After he passed his two-year probation period and became a permanent employee, the "recruitment incentive" was not processed as a "retention incentive". *See id.* ¶¶ 17, 56-57, ECF No. 1; Compl. Exh. 28, ECF No. 1-2, at 43-45 (noting that pay reviews occur every two years and that recruitment bonuses are "not always approved" and explaining that there is no "retention bonus"). Mathai claims that he would not have accepted employment with the VA had he known that the incentive would not continue beyond the initial two year period. *See* Compl. ¶¶ 7, 17, ECF No. 1.

Mathai asserts a single claim for the intentional infliction of emotional distress based on Dr. Fashina's failure to correct any misunderstanding regarding Mathai's terms of employment in response to his e-mail inquiry. *Id.* ¶ 18. Mathai seeks to recover $20,000,000 (twenty million dollars) in compensatory damages for emotional distress, mental anguish, and related harm because the recruitment incentive was not paid beyond his initial two-year employment term. *See id.* at 20.

## Legal Standard

### I.     Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, *(Miss. Pls.)*, 668 F.3d 281, 286 (5th Cir. 2012). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The party asserting jurisdiction has the burden of establishing it." *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020). Where jurisdiction is challenged, a court "is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite to jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). As plaintiff, Mathai "bear[s] the burden of showing Congress's unequivocal waiver of sovereign immunity." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010). "Courts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

### II.    Rule 12(b)(6)

This Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain detailed factual allegations, but it must include sufficient factual allegations, assumed to be true, "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers," a pro se plaintiff must still "plead enough facts to state a claim to relief that is plausible on its face." *Champion v. United States*, 421 F. App'x 418, 423 (5th Ci. 2011) (quoting *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-61 (5th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Argument & Authorities

This Court lacks jurisdiction over Mathai's single claim for the intentional infliction of emotional distress ("IIED"). Mathai's claim is based on an alleged misrepresentation by Dr. Fashina regarding the availability of a retention incentive following his initial two years of employment. But the FTCA does not waive sovereign immunity for claims arising out of a misrepresentation or deceit. Moreover, sovereign immunity is not waived under the FTCA because Mathai fails to state an IIED claim under Texas law. Finally, to the extent Mathai's Complaint can be liberally construed to assert a non-tort claim, the Court of Federal Claims has exclusive jurisdiction. Accordingly, Mathai's Complaint should be dismissed.

**I.     This Court lacks jurisdiction because Mathai fails to show a waiver of sovereign immunity for Mathai's IIED claim under the FTCA.**

Mathai has not shown a waiver of sovereign immunity for his tort claim. "[A] suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of government agencies or employees." *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d

181, 183 (5th Cir. 1988) (citing 28 U.S.C. § 2679(a)). Subject to exceptions, the FTCA is a limited waiver of sovereign immunity for tort claims against the United States seeking money damages for negligent or wrongful acts by government employees acting within the scope of their employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "[W]hether the United States has waived sovereign immunity pursuant to the FTCA goes to the court's subject-matter jurisdiction, . . . and may therefore be resolved on a Rule 12(b)(1) motion to dismiss." *Willoughby v. United States ex. rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (citations omitted). Here, the Court lacks subject matter jurisdiction because Mathai's IIED claim ultimately arises from an alleged misrepresentation and because Mathai fails to state an IIED claim under Texas law.

### A.  Immunity is not waived for tort claims arising out of a misrepresentation.

First, Mathai's IIED claim arises from an alleged misrepresentation and is thus barred by sovereign immunity. The FTCA's "intentional tort exception" preserves immunity for "[a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). "The FTCA's misrepresentation exception is broad: it bars any claim arising out of a misrepresentation—even if the conduct underlying the claim may also constitute a tort not barred by section 2680(h)." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032 (5th Cir. 2011). "The exception applies to both negligent and intentional misrepresentations, as well as to both affirmative acts and omissions of material fact." *Metro. Life Ins. Co. v. Atkins*, 225 F.3d 510, 512 (5th Cir. 2000). Moreover, a tort claim is barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Truman v. United States*, 26 F.3d 592, 593 (5th Cir. 1994) (quoting *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)).

5

To determine whether the intentional tort exception applies, courts "determine whether 'the chain or causation' from the alleged negligence to the injury depends upon a misrepresentation by a government agent." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Pls.)*, 713 F.3d 807, 811 (5th Cir. 2013) (quoting *Life Partners*, 650 F.3d at 1031); *see also Baroni v. United States*, 662 F.2d 287, 289 (5th Cir. 1981) (affirming dismissal where damages resulted "solely from the fact that the government communicated its miscalculation to the developer who relied on it, and that reliance eventually caused the plaintiffs' damage"). In *Life Partners*, plaintiffs purchased an employee's life insurance policy after the government assured them that the policy had not been previously assigned to another party. *Id.* at 1028-29. But that representation was false; the policy had already been assigned and documented in personnel records. *See id.* at 1029. The Fifth Circuit applied the intentional tort exception and rejected plaintiffs' argument that their negligence claim was based on a failure to adequately examine records, explaining that the injury was instead based on plaintiffs' reliance on the government's misrepresentations. *Id.* at 1033. In short, an alleged injury arises from a misrepresentation, and is thus barred by the intentional tort exception, where a plaintiff would have suffered no injury absent the misrepresentation.

Here too, Mathai's IIED claim depends on the transmission of alleged misinformation concerning his future compensation by a government agent, Dr. Fashina. Mathai alleges that Dr. Fashina offered a $50,000 Recruitment Incentive for Mathai's first two years of employment. Compl. ¶ 17, ECF No. 1. Mathai says that he would not accept an employment offer unless the incentive was continued beyond the first two years. *See id.* ¶ 17, 58. And he states that, although Dr. Fashina told Mathai that "it is typical for the Recruitment incentive to be continued" as a retention incentive, Dr. Fashina "could not promise" that to Mathai. *Id.* ¶ 17. Mathai alleges that he attempted to confirm these details with Dr. Fashina by e-mail, and invited Dr. Fashina to correct

any misunderstanding. *See id.* ¶ 34. Mathai, however, says that he did not receive a response, nor did he receive an incentive after his initial two years of employment. *See id.* ¶ 17-18, 57. Mathai thus alleges that Dr. Fashina made a "material omission" in violation of VA policy to promptly reply to e-mails, and as a result, Mathai suffered "severe emotional distress" by accepting employment with the VA based on his discussion with Dr. Fashina. *See id.* ¶¶ 8-10, 13-14. These allegations are consistent with claims for negligent misrepresentation[1] or fraudulent inducement,[2] both of which include a false representation among their elements. Claims arising from "misrepresentation" or "deceit," however, are excluded from the FTCA's waiver of sovereign immunity.

It makes no difference that Mathai labels his claim for intentional infliction of emotional distress, or that he describes his claim as a failure to exercise due care in promptly responding to e-mail. *See* Compl. ¶¶ 7-8, 10, 12-14, ECF No. 1. What matters is whether the substance of Mathai's allegations arise out of a misrepresentation—courts "look to the underlying conduct rather than the [plaintiff's] pleading." *FEMA Trailer Formaldehyde Prods. Litig. (La. Pls.)*, 713 F.3d at 811 (holding that claims for gross negligence for FEMA's alleged material omission of formaldehyde risk fall under the misrepresentation exception); *see also, e.g., Donnelly Inv. Secs.*

---

[1] To state a negligent misrepresentation claim, a plaintiff must show: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation." *Margolis v. James B. Nutter & Co.*, 808 F. App'x 230, 234 (5th Cir. 2020) (per curiam) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

[2] "[A] fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).

*Corp. v. FDIC*, No. 3:96-CV-2730-R, 1998 WL 460289, at *3 (N.D. Tex. Aug. 5, 1998) (concluding that the FDIC is immune for breach-of-contract claim that "is at base a claim for the tort of negligent misrepresentation"); *Covington v. United States*, 303 F. Supp. 1145, 1149 (N.D. Miss. 1969) ("[I]t was defendant's alleged misrepresentations which induced plaintiffs' reliance thereon, giving rise to their tort claim, and whether plaintiffs style their cause of action fraudulent inducement or otherwise, it still bottoms on alleged factual misrepresentations and is barred by 2680(h)."). Here, the substance of Mathai's IIED claim arises out of his reliance on an alleged misrepresentation: Mathai claims that, based on his communications with Dr. Fashina, he expected to receive a retention incentive beyond his first two years of employment. *See* Compl. ¶¶ 14-18, ECF No. 1.

These allegations squarely fit the description of fraudulent inducement. "In a fraudulent-inducement claim, the 'misrepresentation' occurs when the defendant falsely promises to perform a future act while having no present intent to perform it." *Int'l Bus. Machines Corp.*, 573 S.W.3d at 228. And "[t]he plaintiff's 'reliance' on the false promise 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Id.* They also align with how the Supreme Court has defined negligent misrepresentation claims: the failure "to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs." *United States v. Neustadt*, 366 U.S. 696, 706 (1961). Mathai's claim—however labeled—arises from an alleged misrepresentation, and thus is barred by the intentional tort exception.

      **B.**      **Mathai fails to state an IIED claim under Texas law.**

Mathai's Complaint should also be dismissed because he fails to state an IIED claim under Texas law. The FTCA waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place

where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA's "reference to 'law of the place' means law of the State"—here, Texas. *Meyer*, 510 U.S. at 478. The failure to state a claim under state law deprives the Court of subject-matter jurisdiction under the FTCA. *See Brownback v. King*, 592 U.S. 209, 218 (2021) ("Because King's tort claims failed to survive a Rule 12(b)(6) motion to dismiss, the United States necessarily retained sovereign immunity, also depriving the court of subject-matter jurisdiction."). This Court may thus exercise subject matter jurisdiction only if Texas law would impose tort liability on a private person for the alleged wrongful acts.

Mathai asserts a single claim for intentional infliction of emotional distress. *See* Compl. ¶¶ 7, 10, ECF No. 1. Under Texas law, a plaintiff asserting an IIED claim must allege: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003) (quoting *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000)). "Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Indeed, IIED claims rarely have merit "except in circumstances bordering on serious criminal acts." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 818 (Tex. 2005). This Court lacks jurisdiction over Matha's IIED claim because Texas law does not recognize an IIED claim where allegations support another recognized tort, and Mathai fails to state an IIED claim under Texas law.

### 1. Mathai cannot resort to a standalone IIED claim based on the allegations in his Complaint.

First and foremost, Texas law does not permit an IIED claim based on the allegations in Mathai's Complaint. IIED is a "gap-filler" tort, "allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). But "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* Properly limited, "the tort simply has no application when the 'actor "intends to invade some other legally protected interest," even if emotional distress results.'" *Id.* (citation omitted); *see also Miller v. Target Corp.*, 854 F. App'x 567, 569-70 (5th Cir. 2021) (concluding that IIED is unavailable where the allegations supported claims for defamation and malicious prosecution); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (explaining that plaintiff could not resort to an IIED claim where her complaints are covered by other remedies, even if barred). As explained above, the gravamen of Mathai's Complaint is negligent misrepresentation by omission. *See supra* Section I.A; *see also*, *e.g.*, Compl. ¶ 8, ECF No. 1 (alleging that Dr. Fashina "failed to exercise due care, and in doing so made material omission(s)"). Accordingly, Mathai cannot recover for IIED.

### 2. Dr. Fashina's failure to respond to an e-mail is not sufficiently "extreme and outrageous" to state an IIED claim.

Additionally, the conduct alleged in Mathai's Complaint does not satisfy the high threshold for extreme and outrageous behavior required to state an IIED claim. "A defendant's conduct is 'extreme and outrageous' if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grost v. United States*, 648 F. App'x 459, 461 (5th Cir. 2016) (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "Conduct that is merely rude or

insensitive or that amounts to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' does not rise to the level of 'extreme and outrageous conduct.'" *Id.* (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)). "[I]t is the province of the court to determine whether a defendant's conduct may reasonably be regarded as extreme and outrageous enough to permit recovery." *Atkinson v. Denton Publishing Co.*, 84 F.3d 144, 151 (5th Cir. 1996).

This is a demanding standard. For example, rude, insensitive, and demeaning remarks do not rise to the level of "extreme and outrageous." *See, e.g.*, *Grost*, 648 F. App'x at 462 (concluding that trying to make plaintiff change her job, chastising her, calling her names, and refusing to shake her hand might be rude or insulting, but they did not rise to the level of "extreme and outrageous" conduct under Texas law); *Williams v. Shell Expl. & Prod. Co.–Americas*, No. 14-13-00309-CV, 2014 WL 3555741, at *4-5 (Tex. App.—Houston [14th Dist.], July17, 2014, no pet.) (mem. op.) (concluding that remarks over a six-month period, like telling the plaintiff to "shut up" unless given permission to speak and beckoning her "like a dog," might be rude and insulting, but they were not terrorizing, threatening, and assaultive). Similarly, courts have concluded that allegations that the VA deleted a plaintiff's e-mail to conceal information did not met the "extreme and outrageous conduct" threshold. *See Smart v. United States*, No. 3:23-cv-00319-KC-LS, 2023 WL 11839341, at *2 (W.D. Tex. Oct. 5, 2023) (Schydlower, Mag. J.).

Rather, cases in which courts have found the threshold met involve patterns of harassing, abusive, or near-criminal conduct. *See, e.g.*, *GTE Sw.*, 998 S.W.2d at 613-14. In *GTE Southwest*, for example, the Texas Supreme Court found the "extreme and outrageous" element met where a supervisor engaged in a pattern of abusive and harassing conduct, including the daily use of harsh vulgarities, frequent physical and verbal assaults, and repeatedly calling an employee into his office to stare at her for extended periods of time. *Id.* Similarly, in *Dean v. Ford Motor Credit Co.*,

11

885 F.2d 300, 307 (5th Cir. 1989), the Fifth Circuit concluded that the standard was met where a supervisor placed checks in an employee's purse and accused her of stealing.

Here, Mathai's allegations fall short of extreme and outrageous conduct. Mathai faults Dr. Fashina for failing to promptly reply to his e-mail question confirming his compensation. Compl. ¶¶ 8-10, ECF No. 1; *see also id.* ¶ 7 ("This claim is for Intentional Infliction of Emotional Distress, which rests on the Chief of Staff of the Central Texas VA, Dr. Olawale Fashina, not responding to my e-mail on August 22, 2019." (emphasis omitted)). Mathai alleges that he suffered severe emotional distress as a result of Dr. Fashina's failure to ensure prompt replies to queries. *See id.* ¶¶ 7, 14, 18. But Mathai does not allege that Dr. Fashina engaged in criminal, abusive, or assaultive behavior. Although it may be frustrating, failing to respond to an e-mail hardly amounts to "utterly intolerable" conduct in a civilized community.

## II.     The Court of Federal Claims has exclusive jurisdiction over any non-tort claim.

To the extent Mathai's Complaint can be liberally construed to assert a non-tort claim based in contract, this Court lacks jurisdiction. Rather, the Court of Federal Claims has exclusive jurisdiction over any such claim, and the Complaint should be dismissed.

The Tucker Act provides that the Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *See* 28 U.S.C. § 1491(a)(1). Under the Little Tucker Act, district courts have concurrent jurisdiction with the Court of Federal Claims over such claims only if the damages claimed do not exceed $10,000. *See* 28 U.S.C. § 1346(a)(2). Where the claimed damages exceed $10,000, however, jurisdiction lies exclusively with the Court of Federal Claims. *See* 28 U.S.C. §1491(a)(1); *Patterson v. Spellings*, 249 F. App'x 993, 995 (5th Cir. 2007); *Amoco Prod. Co. v. Hodel*, 815 F.2d 353, 358 (5th Cir. 1987).

Mathai cannot avoid the Tucker Act by nominally re-characterizing his claim as a tort. *See Amoco Prod. Co. v. Hodel*, 815 F.2d 353, 361 (5th Cir. 1987) ("Courts consistently endeavor to 'pierce' the pleadings so that artful pleading does not undercut the jurisdiction of the Claims Court (that is, Congress' intent in enacting the Tucker Act)."). In determining whether a claim is based in tort or contract, the court is not bound by the parties' characterizations of the complaint. *See City Nat'l Bank v. United States*, 907 F.2d 536, 546 n.9 (5th Cir. 1990). And "claims which are founded upon an alleged failure to perform contractual obligations are not tort claims that support subject-matter jurisdiction under the [FTCA]." *Davis v. United States*, 961 F.2d 53, 56 (5th Cir. 1991); *see also id.* at 56-57 (affirming dismissal of wrongful conversion and tortious act claims against the United States because they were predicated upon an alleged breach of a condition in a promissory note); *City Nat'l Bank*, 907 F.2d at 546 (affirming dismissal of FTCA gross negligence claim based on allegations that the FDIC failed to pay amounts owed on a promissory note); *Blanchard v. St. Paul Fire & Marine Ins.*, 341 F.2d 351, 357-58 (5th Cir. 1965) (affirming dismissal of negligence claims that were "grounded essentially in contract" and explaining that claims "founded upon an alleged failure to perform explicit or implicit contractual obligations" are "not deemed 'tort' claims" under the FTCA). Where a tort claim is in fact based on the failure to fulfill a contract obligation, jurisdiction is based on the Tucker Act, not the FTCA.

Mathai asserts that "[t]his is not a case about benefits accruing to a contract," Compl. ¶15, ECF No. 1, but his claim is based on the alleged failure to fulfill an agreed-upon term of his employment related to his compensation, *see id.* ¶¶ 16-18. Mathai alleges that he was entitled to additional compensation based on representations made by Dr. Fashina and that the United States is liable for the VA's failure to pay Mathai a "Retention Incentive" after his initial two-year "Recruitment Incentive." *See id.* ¶¶ 17-18. Like the gross negligence, wrongful conversion, and

13

tortious act claims in *Davis* and *City National Bank*, these claims are in essence based on an alleged failure to fulfill a promise. *See Davis*, 961 F.2d at 56-57; *City Nat'l Bank*, 907 F.2d at 546. And Mathai expressly seeks $20,000,000, far more than the $10,000 jurisdictional limit under the Little Tucker Act. *See* Compl. 20, ECF No. 1. Accordingly, to the extent Mathai's claim can be liberally construed to assert a breach of contract or non-tort claim, the Court of Federal Claims has exclusive jurisdiction, and Mathai's Complaint should be dismissed.

## Conclusion

For the foregoing reasons, this Court should dismiss Mathai's Complaint, ECF No. 1, for lack of subject matter jurisdiction.

Dated: March 24, 2025                    Respectfully submitted,

**Margaret F. Leachman**
Acting United States Attorney

By:   */s/ David B. Goode*
      **David B. Goode**
      Assistant United States Attorney
      Texas Bar No. 24106014
      U.S. Attorney's Office
      903 San Jacinto Blvd., Suite 334
      Austin, Texas 78701
      (512) 916-5850 (phone)
      (512) 916-5854 (fax)
      david.goode@usdoj.gov

      *Attorneys for Defendant*
      *United States of America*

## CERTIFICATE OF SERVICE

I certify that on March 24, 2025, I have mailed this document by United States Postal Service to the following non-CM/ECF participant:

Koshy Mathai, M.D.
16325 Donoher Drive
Austin, Texas 78717

                           */s/ David B. Goode*
                           David B. Goode
                           Assistant United States Attorney

15